able from the appropriation from the Road Fund in the manner provided for in such Act.

(No. 3596—

MARGARET ADAMS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 10, 1942.*

*Rehearing allowed March 11, 1942.*

*Opinion on rehearing filed May 12, 1942.*

ROY A. PTACIN, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

The complaint in this case, filed March 18, 1941, asks an award of $1,232.82. It states that Margaret Adams was employed by the Department of Public Welfare at the Chicago State Hospital, Chicago, Illinois, as an attendant.

That on January 24, 1941, she was reporting for duty, had entered the grounds of said hospital, which are set off by a high fence, and gate. That she had proceeded some fifty or seventy-five feet inside of the main gate of said institution, and while walking on the sidewalk, which was slippery with ice, she suddenly slipped, and was thrown to the sidewalk and sustained injuries for which she should be paid under the provisions of the Illinois Workmen's Compensation Act.

The file consists of the complaint and amendment thereto,

transcript of the evidence, taken on June 6, 1941, and abstract of same, also evidence of claimant taken on October 3, 1941, brief, statement, and argument of attorney for claimant and assistant attorney general for the respondent.

The evidence, taken on June 6, 1941, shows that the claimant had been employed at said hospital for some length of time, prior to January 24, 1941, and was in charge of a ward housing approximately 150 patients and had two employees under her supervision. That on the last mentioned date at about 6:30 A. M., while going to work, and having passed the main gateway, which was the usual and customary entrance used by employees and after passing within the grounds from fifty to seventy-five feet inside the main gate, and while walking along on the sidewalk leading to her place of employment she approached a curve in said sidewalk, and starting around the curve both feet shot out from under her causing her to fall. She was unable to arise for some time, but finally pulled herself up by the use of a light post which was close by. Upon arising she discovered that she could not put her right foot to the ground. Another attendant came along and with his and other assistance she was taken to the gate house where she was placed on a stretcher and taken directly to the institution hospital. She was put to bed, given a hypodermic to quiet her pain, x-rays were made, and sand bags were put around her right limb, the site of the injury. On the following day the right femur was set by Dr. Samuel R. Rubert, who held the position of Consulting Orthopedic Surgeon at the Chicago State. She was kept off her feet for approximately three months without weight bearing.

The evidence further shows she reported for duty on Sunday, June 15, 1941, worked one shift and due to the swelling and pain in her right limb she was unable to return the following day. She remained away from her work thereafter until the sixth day of July, 1941. She has been working regularly for the respondent since that time. The record shows that due to the injury she was confined to her bed for five weeks, then for about three weeks was in a wheel chair for a few hours each day and then was compelled to go back to bed. Later she used crutches to get around. Her wages paid by the respondent amounted to $63.00 per month and one meal a day at the institution, valued by the Department of Public Welfare at the sum of $6.00 per month. In her attempt to get

well she incurred a doctor bill which is due Dr. Samuel R. Rubert in the sum of $300.00; $3.00 to Dr. R. M. Fonner, $2.00 for an office visit, and her wheel chair rental was $5.00. In all she claims to have expended or become liable for $332.70 for medical treatment and medicines, of which $32.70 was paid by her leaving an unpaid bill of $300.00 due to the said Dr. Samuel R. Rubert. All hospital services were furnished by the respondent except the above enumerated items.

Claimant at the time she suffered the injury was fifty-one years of age, married but having no children under sixteen years of age.

Two points are to be decided, first whether or not the claimant was on duty at the particular moment of the occurrence, and if so whether or not she is entitled to an award for temporary and permanent partial incapacity or disability.

The issue raised in the record is whether the claimant's employment had begun at the time of the accident, under the terms of the Workmen's Compensation Act. This must be decided before an award shall be made or denied. The testimony shows that she had entered the grounds of the respondent, the place of the accident being some fifty to seven-five feet within the main gate when she slipped and fell. In the case of *Indian Hill Country Club* vs. *Ind. Comm.*, 309 Ill. 271, the court said:

"It is not essential to the right to receive compensation that the employee should have been working at the particular time when the injury was received. The employment is not limited to the exact moment when he begins work and when he quits work. An injury accidentally received on the premises of the employer by an employee while going to or from his place of employment by a customary or permitted route, within a reasonable time before or after work, is received in the course of and arises out of the employment."

*Union Starch Co.* vs. *Ind. Commission*, 344 Illinois 77.
*Sullivan, et al.*, vs. *State of Illinois*, 10 C. C. R., 18.

We must conclude that at the time of the accident in question Margaret Adams was on the premises of her employer; was at the immediate place her labors were to be performed; was traveling a natural and permissible course included in the field of her labor; the accident occurred at approximately 6:30 A. M. and she was due on her job at 6:45 A. M. We believe the record sufficiently discloses that the accidental injuries arose out of and in the course of her em-

ployment, within the meaning of the Workmen's Compensation Act.

The next question for this court to decide is the extent of the injury.

The evidence taken on June 6, 1941, discloses that Dr. Albert C. Field, called on behalf of the claimant, testified that he examined the claimant on May 23, 1941, and found the right leg was somewhat swollen and edematized. The right ankle measured 9½ inches and the left 8½ inches; her right calf measured 13½ and the left 13 inches; the right knee measured 16 and the left 15½ inches. He stated the foot was rotated somewhat outward and there was a restriction of movement in the hip and she walked with a decided limp, and was using a cane. There was some limitation of flection of the right knee, the capsule being somewhat thickened. He stated the weight bearing surface was somewhat altered, and that the x-rays disclosed a fracture of the cervical neck of the femur which was held in apposition by two screws, which were in place at that time, and that the fracture line was fairly well healed. He stated that, in his opinion, based on reasonable medical certainty that her disability at that time was a good 60 per cent of her right leg. There was no cross examination of this witness by the respondent.

Dr. Samuel R. Rubert, who stated he held the position of Consulting Orthopedic Surgeon at the Chicago State Hospital was called by the respondent. He stated he was called on the case the day after the accident, and found she had sustained an intermuscular fracture of the neck of the right femur, which he treated by insertion of two screws through an incision over the trochanter. That to perform this operation he gave her a local anesthetic; that she was kept off her feet for three months without weight bearing, and was then instructed to begin bearing weight on the limb. That she was a good patient and the result was a good one. He stated that at the time of the hearing, June 6, 1941, she had an excellent recovery up to that time and that her disability was not over 25 or 30 per cent. That she had some arthritic changes both in her knee and her hip, not the result of the accident. On cross examination he stated that the last x-ray showed good bony union.

Further testimony was taken on October 3, 1941, the claimant was called as a witness in her own behalf. She

stated that she reported for duty on Sunday, June 15, worked one shift, and went home very disabled; she said her leg was quite swollen and she was not able to go back to work. It pained her considerably and interrupted her sleep. She was paid by respondent for this day. She further stated that she again reported for work on July 6, and has worked at the same occupation for which she is now being paid the same wage rate, and so far as the record is concerned is still an employee of the respondent. Nowhere in her evidence taken at this time is there any reference to her inability, if any, to do the work she formerly performed prior to the injury, and it must be assumed that she is performing satisfactory services for the respondent.

Her claim is made for compensation for both temporary and permanent partial disability. The burden of proof is on the claimant to show such disability, and to establish her right to compensation therefor, and this she has failed to do. Where it appears that her earning capacity is apparently as great at the time of the hearing on such claim as before the accident, and that employee is fully able to perform the same duties no basis is shown upon which to estimate an award for permanent partial disability.

Where it appears that employee sustained accidental injuries arising out of and in the course of his employment, while engaged in hazardous employment, resulting in temporary total disability, an award may be made for compensation for same, in accordance with provisions of the Act, upon compliance with provisions thereof if the proof supports it.

*Wiedner* vs. *State of Illinois*, 10 C. C. R., 400.

From a consideration of the entire record we must conclude that the end of claimant's total temporary disability was July 6, 1941, on which day she returned to work at the same wages and apparently has performed the same duties required of her prior to her accidental injuries.

Claimant's regular salary was $63.00 plus $6.00 maintenance per month, making a total of Sixty-nine ($69.00) Dollars per month, or an annual salary of Eight Hundred Twenty-eight ($828.00) Dollars. This is an average weekly wage of Fifteen Dollars and Ninety-two Cents ($15.92), the rate of compensation therefore would be Seven Dollars and Ninety-six Cents ($7.96) plus a ten per cent increase, as provided under Section Eight (8), Paragraph (L) of the Work-

men's Compensation Act, being Eight Dollars and Seventy-six Cents ($8.76).

From a consideration of the evidence the court finds the claimant is entitled to temporary total disability for a period of twenty-three (23) weeks, at the rate of Eight Dollars and Seventy-six Cents ($8.76), amounting to Two Hundred One Dollars and Forty-eight Cents ($201.48), from which must be deducted the sum of Fifty-one Dollars and Seventy Cents ($51.70) paid to claimant for non-productive work subsequent to said accident which leaves a balance of One Hundred Forty-nine Dollars and Seventy-eight Cents, ($149.78), plus Thirty-two Dollars and Seventy Cents ($32.70) for money expended for medicines, bandages, wheel chair and crutch rental, by the claimant, making a total sum of One Hundred Eighty-two Dollars and Forty-eight Cents, ($182.48). The bill shown by the evidence and filed herein in the sum of Three Hundred ($300.00) Dollars for services rendered to claimant by Dr. Samuel R. Rubert, was incurred with the approval of the respondent and is entitled to payment.

It is therefore ordered that an award be, and the same is hereby allowed for the payment of said bill in the sum of Three Hundred ($300.00) Dollars in favor of claimant for the use of Dr. Samuel R. Rubert. It is further ordered that an award be, and the same is hereby allowed claimant for temporary total disability sustained by her in the accident in question, in the sum of One Hundred Eighty-two Dollars and Forty-eight Cents ($182.48), which includes the sum of Thirty-two Dollars and Seventy Cents ($32.70), expended by her for the items above mentioned, making a total amount of Four Hundred Eighty-two Dollars and Forty-eight Cents ($482.48), all of which has accrued and is payable at the present time.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided for in such Act.

SUPPLEMENTAL OPINION ON REHEARING.

Per Curiam.

On February 10, 1942 an award was entered in the above entitled cause in favor of claimant in the sum of $182.48 for temporary total disability and for $300.00 for the use of Dr. Samuel R. Rubert for medical services rendered to the claimant. Her claim for permanent partial loss of use of her right leg under the provision of Section (8), Paragraph (E) of the Workmen's Compensation Act, was denied for the reason that the court was not convinced that she had proven, by a preponderance of the evidence, that she was entitled to same.

On February 27, 1942 a petition for a rehearing was filed by claimant asking leave to produce further testimony to support her claim for permanent partial loss of use of said right leg. This court granted the prayer of petitioner on the 11th day of March, 1942. Pursuant to said order additional testimony was taken in Chicago on the 10th day of April, 1942, there being present the petitioner, Margaret Adams, Dr. Albert C. Field, the attorney for the claimant, and the Attorney General representing the respondent.

Dr. Field testified that he had re-examined the claimant on the 25th day of March, 1942 and took an x-ray film on the same day, which was offered and received in evidence. From his re-examination of claimant and the reading of the x-ray film, and in answer to a hypothetical question he states that there has been no improvement in the condition of the right hip and leg of the claimant from his examination made on May 23, 1941. That in his examination of the claimant on March 25, 1942 that the x-ray taken on that day revealed that the fracture had not entirely healed; the hip, however, is still in place, being held in apposition by two screws that are about three and one-half (3½) inches in length. The x-ray, however, disclosed a deterioration of the condition of the claimant's leg. The first x-ray taken on March 23, 1941 showed an area of increased density in the region of the right sacro-iliac joint, and showed the area to be hardened. The latter x-ray taken March 25, 1942 revealed the hardened area had been absorbed, that is, a process of bone deterioration had been going on, and showed that the claimant actually had a hole in the bone of her sacro-iliac region. He stated that

this condition and the loss of use of claimant's leg are permanent in nature and are the direct result of the accident suffered by claimant on January 24, 1941.

At the original hearing on June 6, 1941, Dr. Field also testified for claimant, stating that in his opinion, on a thorough examination of claimant and the study of an x-ray film taken of her right hip joint that she had suffered a sixty (60) percent disability of her right leg, and that he was now of the opinion that her condition had not improved since he testified at the first hearing.

The claimant also testified on the 25th day of March, 1942, she stated she had been working steadily since July 6, 1941, but now her work consists principally of supervision of two other employees. That prior to the accident she walked around the ward and now she is not able to do so, she does most of her work from the desk. That there is constant pain in the limb, and hip, and if she stands very long there is a swelling; that she does not have the free action of her right leg as she formerly had, and that change of weather affects it very much; that she is now unable to run, and that she is constantly falling to her right side. She is unable to turn in bed at night without pain, and that when she does she has to pull herself over by the edge of the mattress and that she is unable to stoop and pick up things from the floor on her right side.

There was no evidence in rebuttal offered on behalf of respondent. On the basis of the evidence submitted as to the present condition of the claimant's right leg, the court finds that a sufficient legal basis for an allowance of an additional award for permanent partial disability of claimant's right leg has been shown. *Nokomis Coal Co.* vs. *Industrial Commission,* 308 Illinois, 609; *Swift & Co.* vs. *Industrial Commission,* 302, Illinois, 44.

That an award of sixty (60) percent loss of use is a fair and reasonable percentage to allow claimant as the result of the injuries suffered by her while in the employment of the respondent on the 24th day of January, 1941, as provided in Paragraph (E) of Section (8) of the Workmen's Compensation Act.

Claimant's salary was $63.00 plus $6.00 maintenance per month, making a total of $69.00 per month, or an annual salary of $828.00. This is an average weekly wage of $15.92.

The rate of compensation therefore would be $7.96 plus a 10 percent increase, as provided under Section (8), Paragraph (L) of the Workmen's Compensation Act making her compensation rate $8.76.

It is therefore ordered that a supplemental and additional award be entered herein in the sum of $998.64, calculated as follows: Under the Compensation Act the full loss of use of claimant's right leg would be 190 weeks; sixty percent thereof would be 114 weeks to be paid to her at the rate of $8.76, her weekly compensation rate. Forty-five weeks having accrued the claimant is entitled to the sum of $394.20, in a lump sum, leaving a balance due her of $604.44, payable in sixty-nine weekly installments of $8.76 per week.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the general revenue fund in the manner provided for in such Act.